No. 11,232.

Texas Company v. Commercial Savings Bank.

Decided June 15, 1926.

Action for conversion.   Judgment for defendant.

*Affirmed.*

1.  Agency—*Corporations*—*Estoppel.* An oil company knowing the practice of the manager of its local filling station to deposit warrants drawn to its order in a bank to the credit of his personal account and remit to it by exchange paid for by checks drawn thereon, held estopped from denying his authority to so act.

2.  Corporations—*Agency*—*Estoppel.* Where an oil company by a course of dealing extending over a long period of time gave a bank to understand that its managing agent might deposit warrants, drawn in its favor, to the credit of his personal account and remit to it by exchange paid for by check thereon, it will not be permitted, when its agent defaults, to repudiate its conduct and stand upon secret limitations of agency.

3.  Instructions—*Requests.* Requested instructions which misstate the evidence, are properly refused.

*Error to the District Court of Logan County, Hon. H. E. Munson, Judge.*

Messrs. Prosser & Freeman, for plaintiff in error.

Messrs. Coen & Sauter, for defendant in error.

*Department One.*

Mr. Justice Burke delivered the opinion of the court.

These parties occupy the same relative position here as in the trial court and for convenience we refer to them as plaintiff and defendant.

Plaintiff brought this action against defendant to recover for the conversion of certain municipal warrants, and to review a judgment entered against it prosecutes this writ.

Plaintiff operated an oil station at Sterling, Colorado, and Frank Arthur was its manager in charge thereof. Defendant was in the banking business in that city. Five warrants of said city and two of Logan county, all belonging to plaintiff and totaling some $1,700, came into Arthur's hands in his representative capacity. On six of these he impressed a rubber stamp endorsement reading, "Endorsed for exchange payable to the order of the Texas Company, ————Agent," and a seventh he endorsed, "The Texas Co., Frank Arthur Agent." All were presented to defendant for deposit by Arthur and placed to his personal account. Arthur, we here assume, never accounted to plaintiff in any way for the proceeds of these warrants, apparently appropriated them, absconded, and has not been heard from. Plaintiff demanded settlement of defendant, was refused, and brought this action. The cause was tried to a jury which returned a general verdict for defendant.

Arthur's express authority was unknown to defendant, and its actual character is immaterial here. The only question is, Did defendant believe he had authority to so transact business, and was that belief justified by plaintiff's conduct?

Written instructions to transmit such warrants direct had been repeatedly and generally ignored by Arthur. He had discounted them and charged the discount to plaintiff. Contrary to such instructions he had prepared and presented to the city and county statements of plaintiff's account. All these were paid by warrants, and all this was done with plaintiff's actual knowledge and without objection. In at least one instance over $4,000 in such warrants were "cashed" by Arthur at plaintiff's express direction and at a discount of over $150. Plaintiff

audited Arthur's station every three months. Arthur endorsed plaintiff's negotiable paper in several different ways, deposited it in his personal account, and remitted by exchange paid for with his personal check. These practices had not only been followed by Arthur during all the period of his employment, but many of them were followed by his predecessor. All this, save the secret· limitations of the agency, were known to defendant. The most casual examination by the merest novice would have disclosed to plaintiff all these things which were not actually known to it. In view of what it did know, its duty to investigate was clear, and it must be held to know what it should have known. Had this controversy arisen on any of the early warrants so handled by Arthur, another and different question would be presented. But having so long permitted these practices, and thereby misled defendant into the belief that they were within the terms of the agency, plaintiff is bound by them. When one of two parties must bear a loss caused by the defalcation of a third, he will be charged whose conduct made possible the perpetration of the wrong. Hence, under the doctrine of agency by estoppel, Arthur was plaintiff's agent with authority to collect these warrants, deposit the proceeds in his personal account, and remit to plaintiff by exchange purchased by his personal check. *Siegel-Campion Co. v. Ardohain,* 71 Colo. 410, 207 Pac. 82.

Plaintiff, however, says the foregoing rules are here inapplicable because the very endorsement was itself notice to defendant of the limits of Arthur's authority. The answer is that the so-called endorsement was in fact a mere unsigned form, a rubber stamp placed on the paper by Arthur himself. Without the light of custom and course of dealing it meant nothing. Interpreted by these it takes the exact meaning which defendant gave it. Moreover, had the endorsement been written on the warrants at the home office of defendant and signed by it,

and so presented by Arthur, it doubtless would in the first instance have been binding upon defendant. But when plaintiff, by a course of dealing extending over a long period and affecting many such instruments, has, by knowledge and acquiescence, said in substance to defendant: "This endorsement is a mere form, to be accepted by you as an endorsement in blank, which authorizes Arthur to cash this paper and remit to us in whatever way he sees fit," it will not be permitted, when its agent defaults, to repudiate its conduct and stand upon its writing. The general rule of common sense, that actions speak louder than words, is likewise a wholesome rule of law which, under such circumstances as those here presented, has been crystallized into the doctrine of agency by estoppel.

In view of the foregoing we deem it unnecessary to separately consider the two forms of endorsement used on the warrants in question, or the distinctions argued between express and implied authority. In one instance at least Arthur's express authority to sell warrants was established and uncontradicted. In others his implied authority is shown. In each plaintiff is clearly estopped to question such authority. Defendant's requested instructions 6 and 7 each misstate the evidence and were properly refused by the court.

The judgment is affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE ADAMS concur.